UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **LINDSEY TURNER ET AL.** | **CIVIL ACTION** |
| **VERSUS** | **NO. 23-241** |
| **UNITED STATES OF AMERICA** | **SECTION: "H"** |

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

On March 9, 2021, a motor vehicle accident occurred in Gretna, Louisiana between a United States Postal Service (USPS) vehicle driven by Tybryson Miller and a 2017 GMC Acadia driven by Plaintiff Lindsey Turner. Miller was acting in the course and scope of her employment as a USPS carrier at the time of the crash. Turner and her husband have brought claims against Miller's employer, the United States of America, under the Federal Tort Claims Act ("FTCA") for injuries Turner alleges she sustained in the accident. The Court previously granted summary judgment in Plaintiffs' favor on the issue of liability. A bench trial on damages and causation was held on March 25, 2024.

Having considered the evidence admitted at trial and the arguments of counsel, this Court makes the following findings of fact and conclusions of law. To the extent a finding of fact constitutes a conclusion of law, and vice versa, the Court adopts it as such.

## FINDINGS OF FACT

### A. Preexisting Condition

1. On February 6, 2021, Plaintiff Lindsey Turner awakened with a sharp shooting pain in her scapular region in the back of her shoulder. When she lifted her shoulder, she experienced a pulling in her neck. Ms. Turner had experienced similar pain before that resolved on its own within a week.

2. On February 22, 2021, Ms. Turner sought chiropractic treatment because the pain had not resolved. At that time, Ms. Turner described the pain as sharp, throbbing, shooting, aching, tingling and swelling. Ms. Turner rated the pain a ten out of ten and indicated that this pain was interfering with her work, sleep, physical activity, and daily routine.

3. Ms. Turner underwent chiropractic treatment on February 22, 24 and 25, 2021.

4. Ms. Turner's chiropractor diagnosed her with a pinched nerve.

5. On February 25, 2021, Ms. Turner visited an urgent care clinic for her pain at the suggestion of her chiropractor. Mrs. Turner complained to the urgent care back pain of the right scapular region, right shoulder pain that radiated to her arm. The urgent care clinic gave Ms. Turner an injection of Toradol and prescribed her (i) Lodine, 400mg; (ii) Prednisone, 20mg, a steroid; (iii) cyclobenzaprine, 10mg, a muscle relaxer; and (iv) tramadol, 50mg, an opioid.

6. On March 4, 2021, Ms. Turner sought treatment for this pain from Dr. Katz, an orthopedic surgeon. Her chief complaint at this visit was right posterior shoulder pain. She reported having had spasms in the posterior neck and scapular area and pain that went down to the right

forearm. She had pain in the right trapezial area, some pain in the right anterior shoulder, and had some episodes of numbness and tingling in the ulnar two digits.

7. On March 4, 2021, Dr. Katz performed a cervical exam that revealed mild tenderness in the right posterior trapezial area going to the scapula, some mild right lateral neck pain in the medial trapezial area, no tenderness or pain in the posterior neck, and a full range of motion with flexion, extension, lateral rotation, and side bending with no significant pain in the neck itself.

8. On March 4, 2021, Dr. Katz performed a right shoulder exam that revealed tenderness over the rotator cuff structure laterally and posteriorly and near full range of motion with forward flexion, extension, internal and external rotation, abduction, adduction but pain with abduction and external rotation.

9. On March 4, 2021, Dr. Katz performed an exam of Ms. Turner's elbow and found she had symptoms of cubital tunnel syndrome. He opined that the numbness and tingling in her ulnar fingers was coming from her elbow and not her neck.

10. On March 4, 2021, Dr. Katz ordered physical therapy for Ms. Turner's cervical and right shoulder, as well as an MRI for Ms. Turner's shoulder and neck.

11. There was no evidence that Ms. Turner missed work or was unable to care for her family as a result of this condition.

### B. Motor Vehicle Accident

12. On March 9, 2021, Ms. Turner was involved in a motor vehicle accident with a USPS vehicle.

13. The driver of the USPS vehicle, Tybryson Miller, was at fault for the accident. Ms. Miller, while acting in the course and scope of her employment as a USPS carrier, failed to stop at a stop sign when exiting the parking lot of the post office and crashed into Ms. Turner's vehicle. Ms. Turner was driving on Gretna Boulevard at twenty-three (23) miles per hour (mph).

14. This Court did not find Ms. Miller's testimony—that she stopped at the stop sign and then her foot slipped off the brake and she rolled into the roadway—to be credible. The Curt finds it more likely that Ms. Miller failed to stop at the stop side and drove into the roadway.

15. The Court found Ms. Turner's testimony to be very credible.

16. Ms. Turner hit her head on the window of her vehicle upon impact.

17. Ms. Turner's SUV was towed from the scene.

18. Ms. Turner's mother took her to Ochsner West Bank Emergency Room after the accident where Ms. Turner was diagnosed with a whiplash injury to her neck, neck pain, and trapezius muscle spasms. She was prescribed Flexeril, Toradol, a Lidocaine patch, and given 30mg of a Ketorolac injection and 60 mg of an Orphenadrine injection.

19. In the emergency room, Ms. Turner presented with pain to the right side of the shoulder and axillary radiating down to her fingers. She described the pain as numb, tingling, throbbing and burning. She also had pain in the back shoulder and mid back.

20. On March 11, 2021, Ms. Turner treated with Dr. Katz again. At this time, Ms. Turner's chief complaint was neck pain. Ms. Turner's pain complaints after the accident were different in character and caliber than those prior to the accident. She complained of worsening pain in the right side of her neck going to the trapezial area, a new referred

pain and burning sensation from the neck down the right arm with intermittent numbness and tingling in the ulnar 2 digits. She described her scapula pain as 8/10 and her shoulder and neck pain as 10/10. She reported constant stiffness and burning and daily spasms.

21. Because Dr. Katz examined Plaintiff within days before and after the accident, the Court found his testimony regarding her condition to be the most helpful and credible. Defendant's medical expert in neurosurgery, Dr. Donald Dietze, agreed that because Dr. Katz actually examined Ms. Turner, he was in the best position to opine on her condition before and after the accident.

22. This Court adopts Dr. Katz's opinion that the motor vehicle accident aggravated Plaintiff's shoulder complaints and caused a new injury to her posterior neck and inner scapular. Dr. Katz testified that prior to the accident Ms. Turner did not have any significant pain in the neck itself.

**C. Medical Treatment**

23. On April 5, 2021, Ms. Turner treated with Dr. John Logan and was diagnosed with Cervicalgia and right shoulder pain. Dr. Logan ordered physical therapy and MRI scans of the cervical spine and right shoulder joint and continued medications initiated by Dr. Katz, adding Fioracet for headaches.

24. On April 15, 2021, Ms. Turner underwent an MRI ordered by Dr. Logan. It revealed a C5-6 (3 mm) herniation and a C6-7 (6mm) herniation with an annular tear deforming the cervical spinal cord, and Neural foraminal stenosis as a consequence of diffuse bulge of the annulus fibrosis with marginal osteophyte formation, bilaterally, at C5-6 and C6-7.

25. On July 13, 2021, Ms. Turner began physical therapy. From July 13, 2021, to August 20, 2021, Ms. Turner attended nine (9) physical therapy sessions. Mr. Turner felt that physical therapy did not provide lasting relief and even worsened her symptoms at times.

26. On October 4 and November 18, 2021, Dr. Logan performed bilateral C6-7 facet injections. Ms. Turner received temporary relief from these injections.

27. On January 24, 2022, Dr. Logan recommended C6-7 fusion surgery.

28. Ms. Turner was hesitant to undergo a fusion because of the restricted range of motion typically associated with a fusion. She therefore sought out a second medical opinion from neurosurgeon Dr. Najeeb Thomas after asking for a recommendation of a neurosurgeon from medical professionals that she had previously worked with in the ICU. On May 25, 2022, Ms. Turner met with Dr. Thomas.

29. On July 8, 2022, Dr. Kevin Martinez performed a bilateral transforaminal epidural steroid injection ("ESI") at C6-7 on Ms. Turner at the recommendation of Dr. Thomas. Ms. Turner received temporary relief from this injection.

30. Dr. Thomas recommended an anterior cervical discectomy and cervical arthroplasty at the C6-7 level.

31. Ms. Turner underwent a cervical MRI on October 5, 2022, which showed an increase in size of her C5-6 disc herniation. As a result, Dr. Thomas added the C5-6 disc herniation for surgery, specifically now recommending a C5-6 and C6-7 anterior cervical discectomy and cervical arthroplasty.

32. On February 17, 2023, Dr. Martinez performed a second bilateral transforaminal ESI at C6-7 on Ms. Turner.

33. On August 25, 2023, Dr. Thomas performed a two (2) level cervical discectomy and arthroplasty at the C5-6 and C6-7 levels on Ms. Turner. Ms. Turner stayed overnight for one night in the hospital.
34. Dr. Thomas related the surgery to the motor vehicle accident.
35. The facet injections, ESIs, and discectomy and arthroplasty surgery were a result of the injury that Plaintiff sustained in the motor vehicle accident.
36. Ms. Turner's medical bills since the accident total $201,244.48.

### D. Other Damages

37. Ms. Turner was out of work for eight weeks following surgery. Her salary as a registered nurse is approximately $2,000 per week.
38. After eight weeks, Ms. Turner was able to return to work as a registered nurse without restriction.
39. Ms. Turner is a 36-year-old mother of three. Her children were 1, 2, and 10 at the time of the accident. Prior to the accident, Ms. Turner was the primary caregiver of her children and performed the majority of household tasks, such as cooking and cleaning.
40. Since the accident, Ms. Turner has been more limited in her ability to care for her children, cook, and clean. After surgery she was unable to perform household tasks for two weeks. Since the surgery, she reports having good days and bad days. She still feels unable to perform any household tasks, such as bathing her children or preparing dinner, because of pain one or two times a week.
41. Ms. Turner married Terry Turner in 2017. Both Mr. and Ms. Turner reported more fighting in their marriage since the accident and a decrease in intimacy. Mr. Turner also testified that he has had to

       perform many of the tasks that Ms. Turner had previously performed, such as cooking, cleaning, and caring for the children.

42. Dr. Thomas has not ordered any future medical treatment for Ms. Turner.
43. Ms. Turner has no future lost wages.

## CONCLUSIONS OF LAW

1. This Court has jurisdiction over this matter pursuant to the FTCA.
2. Under the FTCA, the United States is liable to the same extent as a private party for the torts of federal employees acting within the scope of their employment. 28 U.S.C. §§ 1346(b), 2674. The United States's liability for tort claims is according to the law of the state where the alleged tortious action occurred. 28 U.S.C. § 2674.
3. Louisiana's substantive tort law applies in this case.
4. Louisiana employs the duty-risk analysis in negligence cases, under which plaintiffs bear the burden to prove that: "(1) the defendant had a duty to conform his conduct to a specific standard (the duty element); (2) the defendant's conduct failed to conform to the appropriate standard (the breach element); (3) the defendant's substandard conduct was a cause in fact of the plaintiff's injuries (the cause-in-fact element); (4) the defendant's substandard conduct was a legal cause of the plaintiff's injuries (the scope of liability or scope of protection element); and (5) the actual damages (the damages element)." *Audler v. CBC Innovis Inc.*, 519 F.3d 239, 249 (5th Cir. 2008) (internal quotations omitted).
5. The United States was at fault for the accident.

6. Under Louisiana law, the plaintiff bears the burden of proving fault, causation, and damages. *Wainwright v. Fontenot*, 774 So. 2d 70 (La. 2000).

7. "Pursuant to Louisiana law, the diagnosis and opinions of a plaintiff's treating physicians are entitled to greater weight than those of doctors who examined the plaintiff for only litigation purposes." Singleton v. United States, No. CV 19-2684, 2021 WL 765384, at *7 (E.D. La. Feb. 26, 2021) (citing Schouest v. J. Ray McDermott & Co., 411 So. 2d 1042, 1044 (La. 1982)).

8. The components and measure of damages in Federal Tort Claims Act suits are taken from the law of the state where the tort occurred. *Curtis v. Shivers,* 674 F. Supp. 1237, 1239 (E.D. La. 1987). In a personal injury action, a court can award general and special damages. "General damages, are speculative in nature and, thus, incapable of being fixed with any mathematical certainty," such as "pain and suffering, physical impairment and disability, and loss of enjoyment of life." Special damages are those that "may be determined with some degree of certainty and include past and future lost wages and past and future medical expenses." *Allison v. CITGO Petroleum Corp.*, 286 So. 3d 1152, 1161 (La. App. 3 Cir. 2019); *Wainwright*, 774 So. 2d at 74.

9. A plaintiff with a preexisting condition "may still be entitled to compensation if the negligent act aggravated that condition. A causal link must be established between the negligent act and the degree of aggravation." *White v. State Farm Mut. Auto. Ins. Co.*, 713 So. 2d 618, 622 (La. App. 3 Cir. 1998). Where the defendant's negligent action aggravates a pre-existing injury, he must compensate the victim for

        the full extent of this aggravation. *Perniciaro v. Brinch*, 384 So. 2d 392, 396 (La. 1980).

10. "When a defendant's wrongful act causes an injury, 'he is fully liable for the resulting damage even though the injured plaintiff had a preexisting condition that made the consequences of the wrongful act more severe than they would have been for a normal victim.'" Laakso v. Mitsui & Co. USA, No. 88-2450, 1989 WL 149186, at *10 (E.D. La. Dec. 6, 1989) (quoting Maurer v. United States, 668 F.2d 98, 99–100 (2d Cir. 1981)). That said, "if a plaintiff is disabled prior to an accident, a defendant is liable only for the additional harm or aggravation that he has caused." *Id.* In addition, if "a plaintiff has a preexisting condition that would inevitably worsen, a defendant causing subsequent injury is entitled to have the plaintiff's damages discounted to reflect that proportion of damages that would have been suffered even in the absence of the subsequent injury, but the burden of proof in such cases is upon the defendant to prove the extent of the damages that the preexisting condition would [in]evitably have caused." *Id.*

11. "Loss of consortium is a harm to relational interest which occurs when the other party to the relationship suffers physical harm (invasion of an interest or personality)." *McGee v. A C and S, Inc.*, 933 So. 2d 770, 779 (La. 2006). 'The elements of a loss of consortium claim include loss of service, loss of love and affection, loss of society and companionship, loss of sexual relations, loss of support, and loss of felicity." *Doe v. Roman Cath. Church for Archdiocese of New Orleans*, 615 So. 2d 410, 417 (La. 4 Cir. App. 1993).

12. In *Clark v PHI, Inc.*, the plaintiff was recommended to undergo a three-level cervical discectomy and fusion surgery as a result of cervical injuries sustained in a helicopter accident. 33 F. Supp. 3d 700, 722 (E.D. La. 2014). The court noted that the plaintiff described his neck pain as an ache and that, while it impacted his quality of life, it had improved since the immediate aftermath of the accident. The court awarded $200,000 ($260,000 after adjusting for inflation) in past general damages and $25,000 ($32,563 after adjusting for inflation) in future general damages for the neck injury.

13. In *Weeks Marine, Inc. v. Watson*, the plaintiff suffered from "left knee joint, left leg and lumbar and cervical pain as well as intermittent headaches." 190 F. Supp. 3d 588, 596 (E.D. La. 2016). He was recommended to "undergo a left knee surgery, Radiofrequency neurotomy of the L4-5 nerve, and a two level cervical fusion in the future, requiring a total of six to twelve months of recovery." *Id.* The court found that he was entitled to an award of $100,000 ($130,014 after adjusting for inflation) for past pain and suffering and $250,000 ($325,035 after adjusting for inflation) for future pain and suffering. *Id.*

14. In *In re International Marine, LLC*, the court found that an appropriate amount for the plaintiff's past pain and suffering was $75,000 ($109,535 after adjusting for inflation) and for his future pain and suffering was $300,000 ($438,143 after adjusting for inflation) where he suffered pain in his back, neck, and shoulder and had been recommended to have a two-level laminectomy, discectomy, and fusion of the lumbar spine; anterior discectomy and fusion with

      instrumentation of his cervical spine; and an arthroscopic decompression surgery. 614 F. Supp. 2d 733, 739 (E.D. La. 2009).

15. Considering that Ms. Turner is a 36-year-old mother who underwent treatment for nearly two-and-a-half years, encompassing four injections and a two-level cervical discectomy and arthroplasty, she is entitled to damages in the following amounts:
    a. Medical Damages—$201,244.48
    b. Past Lost Wages—$20,000
    c. Past Pain and Suffering—$350,000
    d. Future Pain and Suffering—$75,000
16. Mr. Turner is entitled to $5,000 in loss of consortium damages.

New Orleans, Louisiana this 22nd day of April, 2024.

_____
**JANE TRICHE MILAZZO**
**UNITED STATES DISTRICT JUDGE**